The next cases are also related. We'll start with number 131160, NOVARTIS v. REA, Mr. Christie. We are here today because the PTO did not learn its lesson from Wyatt v. Kappos. The PTO has a history of taking statutes which relate to patent term adjustment I don't think that's your best argument, but go ahead if you want. We've got some difficult statutory questions here and regulatory questions. I don't think accusing the PTO of bad motives or not learning its lesson is useful, but I'm just speaking for myself. I understand, Judge. The issue is statutory construction in addition to the regulatory issues that Your Honor addressed, and the primary issue is looking at the construction of the statute and whether it is a reasonable good faith basis and whether any deference should apply. Are we talking about the jurisdictional timeliness question or the underlying question that's more centrally the issue in the companion case? We're talking about both, Judge. We're talking about the RCE-related statute, section 154B1B, as well as the statute of limitations, the 180-day rule. In both of those cases, we have a situation where the statute is clear and unambiguous, but like Wyatt, the PTO has come up with a nonsensical interpretation which lacks common sense. On the RCE point? Yes. What the PTO is trying to do, Judge, is to limit the benefit to patent owners. What the statute says is if an RCE should arise during the first three years of patent application— Well, it doesn't say that. That language doesn't appear in the statute. I'm paraphrasing. Well, that's the problem. We have to deal not with your paraphrase but with what the statute actually says. The point of the statute, Judge, B1B, is to toll the three-year pendency. It doesn't use the word toll, does it? It does not. What it does, it excludes from counting the three-year deadline for the PTO. It gives the PTO a break. It says we're not going to include this stuff. Why doesn't the language of the statute say what I suggested it says, that you figure out how long it took, you deduct from that RCE time, and you ask whether that's more than three years? I'm not sure why it was drafted the way it was, Judge. No, no, but why isn't the drafting, the language, consistent with that approach? I don't know why it's inconsistent, Judge, but all we have to deal with is the plain language that is written and to interpret it in the non-ambiguous manner that it is entitled to be interpreted. What it means is that under 154B1B, there are certain things which are not going to count against the PTO. They have this three-year pendency deadline, and in order to facilitate that, the RCE, the continued examination, is not going to count against them. But it's an entirely new world pre-three years and post-three years. But the statute doesn't say that RCEs inside the original three-year period and outside it are going to be treated differently, does it? The statute is silent with regard to how RCEs are treated after the three-year point. It is clear, though, that the statute does say that the continued examination will not count against the PTO and count as part of its failure to meet the three-year pendency period. It doesn't say tolling, but in effect, tolling the three-year deadline. Correspondingly, Judge, the PTO's interpretation is not entitled to skip more deference. Can I just add something to stick with this point? I was inclined to think that the government's alternative reading of the RCE provision was actually, in the way that they made it, didn't make much sense. That is, attaching the list of items to what came after as opposed to what came before. But it felt to me, on the other hand, that I think as Judge Dyke was suggesting, that there was an alternative reading of the provision. And I don't quite know what the right terminology is, but that didn't have to do with watching the clock and stopping it, but rather had to do with an arithmetic total. And to read this as saying, the total period from application to issuance has to add up to three years minus certain stuff, which would get them to exactly the position that they have in fact taken, but without this sort of awkward effort to attach the indented list of items to what came after as opposed to what came before. So my question is, suppose I thought that it was amenable to that reading. What else in the statute tells us that would be a bad way of reading that provision? Well, the statute, because of the way it's structured, Judge, you have B1b, which talks about the way in which the guarantees are provided. Then you have B2. B2 is the place where you have the limitations. And the one thing that we take issue with is that PTO is trying to read a new limitation into B1 when it's clear from the statute that it is B2 that governs the limitations on the application of PTA. I guess this is where it seems to me maybe to make a difference in whether one takes the government's argument for its B1 version or the alternative one. By trying to attach it to subtracting from PTA, I think it does run into that problem. But if one, even before you get to that, simply reads the three years provision as a sum total rather than as a kind of a continuously running clock which has to be stopped and once it gets to three years, then it's of no interest anymore. That, it seems to me, doesn't run into the problem of potential inconsistency with the B2 limitations concerning what you don't count in the PTA. I guess part of it is the incongruity between the enforcing regulations, 1.702 and 1.703, because as your honors are aware, they are diametrically opposed at each other. With regard to 1.703, the limitation comports with the PTO's flawed view which applies the limitation to the remedy provision for RCEs, whereas for 1.702 it is applied to the triggering provision that we call it. So the way you have it, when you look at the two statutes and you read them, in effect, when they are combined together and applied, you are applying the RCE to both the triggering and to the remedy provision which contradicts the whole intent of the statute. It makes it clear that the PTO's interpretation is not consistent and not appropriate. It was certainly not carefully analyzed under Skidmore, even though it was a throwaway sentence in a notice and comment rulemaking, and it is not deserving of any consideration because it is not even close to being reasonable. So as a result of it not being reasonable, as a result of it not being carefully analyzed as is required by Skidmore, even judged according to credit, some of the governments are admitted, it is not entitled to the deference because it clearly does not comport with the unambiguous language of the statute. And this issue of statutory construction carries over to the 180 day limitation period, B4A, where we have the 180 days being applied to the ability to seek a judicial review. It is clear because of the incorporation of the subsection B3, the incorporation by reference, that the 180 days is limited only to what we term the pre-issuance PTA determinations, the PTA determinations that are made in correspondence with the notice of allowance as opposed to the issuance PTA determinations. Can you explain what sense there would be in the statute doing what you just said? The sense is that it is clear historically that despite the plain language, comporting with the structure of the statute, that the PTO has until recently always considered the pre-issuance determination and the issuance determination separately. One thing that the government has yet to give any response to is the fact that until recently, when parties were allowed to seek administrative reconsideration of PTA determinations, there was a separate procedure and a separate statute of limitations for the pre-issuance considerations, and there was a separate procedure and a separate statute of limitations for the issuance considerations. It comports with the way that… Well, that's the question, right? I mean, the statute doesn't say that on its face. It's a question of how we interpret the statute. It didn't say that there were different statutes of limitations for the two things on its face. It provided 180 days limitation period from the time of the PTO determinations. What I'm specifically referring to, Judge, is the regulation 1.704, which allows for reconsideration internally of the PTA determinations. The pre-issuance until recently was allowed between notice of allowance and payment of the issued fee. A patentee could seek reconsideration of a pure A delay determination, the pre-issuance determination. What does that have to do with the 180-day period? What it has to do with is it shows that the statute as a whole understands and treats the pre-issuance determinations and the issuance determinations separately, so it is not unusual or absurd in any manner to limit the 180-day statute of limitations merely to the pre-issuance determinations by incorporation of D3 by reference. Why does that make any sense? I understand you put a six-month statute of limitations on figuring out what the term of this patent is going to be, period, full stop. What would be the sense in saying, within six months we're going to figure out what the term is with respect to, only partly figure out what the term is, but what, six years can go by before we actually know what the final bottom line term is? Well, I agree with you, Judge, that this statute was not as artfully drafted as it could have been. But I think what our focus here today is whether, if you look at the plain language, it makes sense and does not yield an absurd result. Well, I guess another way maybe of asking my question, though I'm not sure it's identical, is why isn't it an absurd result? And therefore, what may have been a flaw in the drafting should be overlooked as quite obviously a simple flaw in the drafting. Well, number one, Judge, with all due respect, this Court is not here to correct flaws in drafting. You know, for absurdity, yes we are. Well, I understand, but let me define absurdity. One case which is instructive is U.S. v. Head, H-E-A-D. In that case, it involves cross-reference, specific cross-reference to various subsections. And the case sets out a very cogent, persuasive analysis of, in this context, what is absurdity? And comes to the very logical conclusion that absurdity is linguistic absurdity, where the language just doesn't match up, where there are linguistic inconsistencies. Not absurdity of the nature that, well, this doesn't necessarily make sense, and if I was thinking about it with a clean slate, I would have done it slightly differently, and perhaps it wasn't the most logical way to proceed. Respectfully, that is not the absurdity that we're dealing with with regard to this issue. It is linguistic absurdity. And while this statute perhaps could have been drafted better, we are charged with understanding the plain language which is unambiguous, and which divides into two different worlds, the pre-issuance world of PTA determinations, and the issuance world. But it doesn't really say that, necessarily. It says the 180-day period applies to a determination made by the director under Paragraph 3. And Paragraph 3 talks about making a determination of the period of any patent term adjustment under this subsection. So, taking that language standing alone, it's perfectly clear that the 180-day period would apply to any determination made by the director. You have to go on and read the rest of B1 as cabining the determinations that are being referred to there. I think, Judge, if you look carefully in B3, you see that it talks about only the notice of a determination with a written notice of allowance. And I'm specifically referring you to Sub-Roman 1. And if you look in the entirety of B3, all you're going to find is references to PTA determinations made in conjunction with a notice of allowance. Yeah, but if B1 stopped with the language, make a determination of the period of any patent term adjustment of this subsection, if the section stopped right there, you would lose, right? No, Judge, because this subsection is subsection B3. If you look in the four corners of B3, you're not going to find any talk about an issuance PTA determination, a PTA determination made of patent issuance. You see, you know, in conjunction with the notice of allowance. And that's clear from the totality of the statute that is focusing solely on the pre-issuance procedures as opposed to the issuance. I'm sorry, the subsection here refers to little b, adjustment of patent terms, does it not? That's what the term subsection means in this precise hierarchy of references, so section, subsection, paragraph, subparagraph. So it's not just Roman 3 inside B, it's the entirety of adjustment of patent term, all the adjustments. Okay, well, Judge, I disagree because if you look at B4a, you'll see the precursor language, an applicant dissatisfied with a determination made by the director under paragraph 3 shall have remedy. Right, but then Judge Dyke asks you now let's look at paragraph 3 and if the only content of that paragraph were the sentence that's under capital A and there were no capital B, you wouldn't have an argument because that sentence in capital A under Roman 3 in fact refers to the entirety of the world of patent term adjustments under subsection B. Well, under this subsection, meaning under subsection B3, we interpret it to mean, I understand your view, Judge, that it's under the entirety of subsection B. They're pretty careful about that in using the language at Congress of what they mean by subsection and section and paragraph and whatnot. This is not an issue that the government has ever contested, Judge, that we're dealing with the four corners of B3 when we're dealing strictly with this issue. All right, let's hear from the government. We have the argument and we will have another chance to review it with the next case. Ms. Kurzweil. May it please the Court? I'm Dana Kurzweil for the United States. I'd like to start with the timing issues because we will have a lot of time in the second case also to discuss the RCE issues. As the Court has observed, the statute talks about dissatisfaction with the Director's determination under paragraph 3. And paragraph 3 includes all determinations under this subsection, under small b, so any PTA determination. It's called procedures for patent term adjustments and it gives the Director the authority to issue regulations as to all patent term adjustments. Their argument depends on only looking at 3bi and the fact that one subparagraph within this talks about a specific pre-calculation doesn't mean that all of paragraph 3 is going to be about that. Just to give their argument what it seems to me to be its due, the way that b is written, it sure sounds like it is referring to transmitting a notice no later than the date of issuance of the patent for any patent term adjustment. And if you take that seriously, it suggests that the world of patent term adjustments, that must be a world in which it is at least logically possible to transmit the notice no later than the issuance of the patent. I'm not the issuance, I'm reading the new version. I'm sorry, I don't understand why the old version wasn't included. Yes, I apologize for that. So bi may conceive of that initial determination, but b3 as a whole isn't just talking about that. And d we have after the completion of the director's determination. So there we have the final population completion of the determination. And we know that patent term adjustments, there has to be a final number that what goes out of the notice of allowance is only the preliminary number because things can change that affect PTA after that time. So looking at 1, 2, 3, 4, b3 as a whole, that would cover all patent term adjustments as the court pointed out under this subsection. I guess what you're saying is that the statute may direct the director to do something which is impossible, that is to give the adjustment at the time of the notice of allowance, but that doesn't change the limitations period for challenging the director's determination when it is made. That's right, Your Honor, and that's where their preliminary adjustment comes in, but that can't be the final because things do change after that time. Now the equitable tolling arguments and the taking arguments, and I'm happy to address this if the court has any questions, but those just don't apply to this case. And on the taking point, is that because there's no taking or because there's no waiver of sovereign immunity or both or what? There are a number of problems. There's no taking. This is a question, a challenge to the agency's action. Also, that's a problem. If what you're saying, as this court has said, that regardless of the legality of the agency action, you are entitled to some compensation, that's a taking. But when you're saying you prevail because the agency acted in violation of the statute, that is just a claim for review of agency action. It's not a takings claim. And there's a very specific process, of course, set out in the statute for bringing those challenges within 180 days. You can't bypass that process, as this court said in more reasons, by calling that a taking. Well, you say you're not going to address equitable tolling. Are you conceding that they have a sound argument that they had no basis for appeal until the law had changed? No, absolutely not, Your Honor. Equitable tolling applies where somebody is diligently pursuing their claim. It applies when equity requires that they be heard or that they have an opportunity. Well, it does not apply when somebody just says, we didn't know our argument was a winner until somebody else brought it and won. You said the law changed. It was clarified. Are you conceding their point, or are you going to dispute it? I dispute their point, Your Honor. The change in the law where you say, I didn't know that I was going to win until somebody else brought the claim, and they won, and now I want to do it, too. You don't get equitable tolling in that circumstance. This court said so in many cases. It happens all the time. The law changes, and someone finds that they have an argument they didn't have before. But if they didn't make that argument in a time where they don't get equitable tolling, the exception would be if there's some change that goes to how you bring the claim, when you need to file it, what the time is, how you need to present that claim. Then sometimes there, that kind of change in the law can give you equitable tolling because you got tripped up on the rules about what you needed to do. But there's no case that I'm aware of that says you can sit back and wait until somebody else makes the merits argument and wins, and then pile on in this way. Even though the law is against you. You're saying they needed to pile on even though the law was against them until someone else made the argument and clarified the law? That's right, Your Honor. Why if they made the argument, they bore the cost of litigation. And so if we don't agree on that petition, you're saying they're entitled now for the 18 cases that would otherwise be barred? No, Your Honor. Equitable tolling is simply, as I've said, it's not appropriate here. This kind of change in the law is not the kind of change in the law where any court, and this court addressed this very question in the bench poll, where you get equitable tolling for that kind of change in the law. You don't get to wait for somebody else to make the claim and win. So it's a change in the law by court construction as opposed to a change in the law by statute? Yes, Your Honor. Yes, Your Honor. So this law has been out there, of course, this whole time. If Novartis wanted to challenge PTO's construction, they could have done that back when Wyeth did it, back when it would have been timely for these claims. And they chose not to. They don't get equitable tolling to do it now. And here, this court has not previously pronounced, this isn't even a situation, right, where some authoritative Supreme Court or appellate court precedent would have to be overruled in order to accept their argument? That's right, Your Honor. When this court looked at, so this court has never reached our C issue, and when this court looked at the Wyeth issue, that was the first time. I don't believe this court has said that our rulings are not binding unless the Supreme Court confirms it. That wasn't your intention? No, and that wasn't my intention either. My point is just that you have to bring your claim within the time limit. And if you don't bring your claim within the time limit, you can't come in later after somebody else makes the argument and win. You don't get to, as I think it's worth it, sit on your hands and wait until somebody else makes the winning argument and then come in. Those time limits still apply. If it were otherwise, it would be hard to see what statute of limitations would apply to a first challenge of an agency regulation. Of course, there are statute of limitations for that. If there are no further questions, I'll move on to the RCE issue. On the RCE issue, their interpretation would lead to wildly different PTA results based on perhaps a one-day difference in... I must say, I was not moved by that argument, I will tell you, because that's always true of clear-line physicians. So it seems to me that that didn't seem to me to particularly count in your favor. Well, what we're looking at here is what Congress intended with this statute, and we don't see why Congress would have intended to pass a statute that encourages this kind of delay. I mean, the language seems to say, at least to me, that you figure out how long it actually took. You deduct the things that are supposed to be deducted, and you ask if that's more than three years, and if it's more than three years, then there's an adjustment subject to various other provisions of the statute. I like that reading, Your Honor. Yeah, so we have the language, as Your Honor has explained, and we have the congressional intent to not encourage delay, not encourage filing of... this would also apply, of course, to unsuccessful appeals and applicant-requested delays. We have the intent not to encourage the filing of meritless appeals. I think you have a bit of a problem with the other argument, though, saying that the RCE stops only with the issuance of the patent, because normally the time between the notice of allowance and the issuance counts toward the three-year period. Why should it be any different when there's an RCE? Well, so the RCE is very different from the appeal, where the time stops, right? With the appeal, the jurisdiction is transferred back to PTO, and they're considering, then, the original application, right? Whereas with the RCE, once the RCE is filed, PTO has jurisdiction the whole time. They're not looking at whatever was filed initially anymore. They're looking at... But in normal situations, you're counting the period between the notice of allowance and the issuance as part of the three-year period, no? Yes? I'm sorry. I want to make sure I understand. We're counting the period between the notice of allowance and the issuance as... Part of the three-year period. Part of the three-year period. Ah, if there is no RCE. Yeah. That's right, Your Honor. So why should it make a difference that there's an RCE? Why do they get tagged with the period between the notice of allowance and the issuance under those circumstances, but not normally? Well, if there is no RCE, these are situations usually following a notice of rejection, where none of that would have happened at all. There would have been no period notice of allowance to patent issue. And it was only because of the RCE that any of that later processing happened. So the phrase uses the statute in the whole, any time consumed by continued examination of the patent requested by the applicant under Section 132. Now, without the RCE, there wouldn't have been any of that processing. It's only because they asked for the additional processing that they got to the notice of allowance and that they got from the notice of allowance to the patent issue. So all of that was the result of the RCE. It was what they requested when they requested continued examination under 132. But it's part of the normal process of issuing a patent, which contemplated would be part of the three-year period. It's not as though they say the three-year period stops with the notice of allowance. It stops with the issuance, right? Well, that's true, Your Honor, but we wouldn't be in, where an RCE is filed, we wouldn't be in this situation without the RCE. It's the RCE that gets you usually to the notice of allowance, certainly to the notice of allowance on the patent as it is worded. So all of that is the result of the initial failure to file an application that qualified, that got you to the notice of allowance on the patent, or at least on the patent that you wanted. But for an application in which there's no RCE filed at all and there's just maybe a rejection or maybe no rejection at all, the period between notice of allowance and issuance would count? Yes, Your Honor. I think that's the only point is that the RCE shouldn't make any difference to that evident congressional contemplation. But we wouldn't have ended up in this. You wouldn't have had an issuance in a case. Right. Right, but I'm not sure why that should matter. So the period from the application to the notice of rejection would also happen in three years. So we're looking to get there. Now if the RCE gets you to a different place, it gets you to notice of allowance, then that's the result of the RCE. I see that I'm out of time, but I'm happy to answer any further questions. All right. Thank you, Ms. Kessler. Mr. Christie. Yes, Judge, I'll be brief. I completely agree, Judge. Notice of allowance and issuance happens routinely. You can't fault the RCE just because an RCE is filed and treat that period of time differently because the RCE has been initiating the problem. Look at appellate review, time consumed by appellate review. Under the statute, time consumed by appellate review can end at notice of allowance. Same issue that the government raises. While you're appealing, so anything after the appeal, you know, should not inert to the benefit of the applicant because you are affirmatively appealing. But it's contrary to that provision of the statute. And you're dealing with appellate review, you're dealing with RCE, same types of procedures, same types of results. So for all those reasons, I concur that the time between notice of allowance and issuance under the alternative RCE theory that we proposed, likewise should not count against the applicant and in fact should count as PTO delay. Can I just ask you, would you agree that perhaps there would be an exception if after the notice of allowance, the examiner actually took some affirmative action to reopen his or her examination? I think under those circumstances, if there was a return to examination, which is a jurisdictional issue, then there would be continued examination, which would be an exception to this, Judge. But, you know, that's highly fact-specific. There's no indication that any of those things happened for any of the Novartis patents. The government has never raised that allegation. It's not part of the record here. With regard to equitable tolling, briefly, Judge Nguyen, the Wyeth case was such a watershed event in the patent bar, this court's opinion in Wyeth. Because Wyeth had stood up to the PTO and for the first time, a court of appeals had said, you're right. The PTO got it wrong. They did not review an unambiguous statute the right way. They were doing AB overlap inappropriately. And that, in the minds of patentees, was, again, a watershed event, which opened up possibilities to challenge the PTO's improper interpretation of the statute. So when we talk about counsel for the government talks about venture coal, we're talking about two different theories. We're not talking about a claim of rule, which is you should have known you had a cause of action. Instead, we're talking about equitable issues. Is it equitable under the factual circumstances presented to Novartis that they should be allowed to toll the statute? The unending, unequivocal position of the government for over ten years in their Federal Register notices, on their website, public statements by officials, and not to mention our reconsideration petitions, Novartis was trying to push the envelope, trying to do the right thing by filing these PTA reconsideration petitions, raising these issues, the YF issue, the RCE issue, and again being told, no, you're wrong, we are the PTO, we know best, and we are right. Under the case law that we've cited, reasonable reliance upon government officials being lulled into inaction by the government are factual circumstances which should permit the equitable tolling here. And finally, Judge, with regard to the taking issue, the government talks about the fact that there's a dedicated procedure under the 180-day rule that deals with Tucker Act jurisdiction. We are not here on Tucker Act jurisdiction. Tucker Act deals with claims more than $10,000, initially needs to be brought in a court of claims. Here, the government concedes that what Novartis is seeking is not compensable by money damages, they're not seeking money damages. So if it's not the Tucker Act, what waiver of sovereign immunity are you suing under? I'm sorry, Judge? What waiver of sovereign immunity are you suing under? We're suing under the Fifth Amendment of the Constitution, which permits aggrieved citizens who have had compensable takings to bring their act to law. And that is the basis for the sovereign immunity waiver. Thank you. Okay. Thank you, Mr. Christie. And Ms. Karasang, do you have a minute left? Do you need to rebust? I have a minute left. I would be happy to go back to these calculations issues in terms... I think that it's important... Is this rebuttal? Are you rebutting something Mr. Christie's said? Yes, Your Honor. Okay. So Mr. Christie was talking about examination and the definition of examination. And I think that it's important to look at that entire phrase. Any phrase consumed... I'm sorry, any time consumed by continued examination of the patent requested by the applicant. So it's not just whether they're actually examining at the moment or not, it's whether this is the RC process that they asked for. And we think that RC process goes right up until the patent is issued. And regulations in other places delay in issuing the patent after payment of the issue fee is considered to be examination delay under 37 CFR 1.70386. So examination would go up to that time. Okay. Thank you. All right. This case is submitted.